Mr. Ingram. Good morning and if it please the Court. My name is Dale Ingram. I represent the petitioner, Mr. Brian Baldwin, who happens to be present at the foreground today. As the Court is aware, the petitioner raised four issues in his brief contesting the Board's decision upholding the determination of Mr. Baldwin for 57 of the 60 charges. that were found in the proposed removal letter. In regard to the first issue, the petitioner suggests the best place to begin the analysis of the petitioner's argument and the decisions of the Board is to look at the language of the charges as they were written in the proposed removal letter. The letter proposing his removal is found on page 147-164 of the appendix. There's a total of 60 charges and, as I said, only 57 charges were addressed in the Board's decision. And the 57 charges are broken down into two categories. There are 32 charges of misuse of government property and 25 charges of misuse of government time. Each of the charges of misuse of government time correspond to one of the charges of misuse of government property. All 32 charges of misuse of government property are worded exactly the same. The differences are in the specification in which the date, time, and length of use is set out. At first blush, the charges would appear to be sufficient to provide the petitioner with notice of the exact nature of the charges. For instance, charge 4 is found on page 148, states the charges as, quote, as an employee of the Department of Veterans Affairs, you are required to use DVA equipment only for official business and not for personal reasons. You are thus charged with misuse of government property. So the charge means that you cannot use government property at all for personal reasons. And if you do, that violates the policy. However, when you look at the relevant policy, which is found on page 229 of the appendix, the policy states, VA employees are permitted limited use of government office equipment for personal needs if it does not interfere with official business and involves minimal additional expense to the government. So the charge doesn't allege a violation of the policy. How does one respond to a charge that doesn't violate any policy or any rule? Well, how can you conclude that? I mean, in these charges he was on, in the one you pointed to, he used the computer for non-work related matters for 38 minutes. How is that not a problem? He's getting paid for a work day, more than half an hour of that work day doing non-work related stuff, searching the internet. If the rule was you cannot use it for any purpose, then that is a violation, even if it's for one minute, ostensibly, or 38 minutes, or as much as 102 minutes. But it's not per se a violation of the policy to use it for personal use, which is what the charge says. Well, didn't they decide to only proceed on the instances that were 10 minutes or larger? Sure. Yep, that's correct. So wouldn't that be an interpretation of their policy about what would, in fact, interfere with work because the policy as set out suggests that not, unlimited use is not okay. Certainly. There has to be some reasonable discretion and limitation, and wouldn't sort of a saying, well, if somebody used the internet for a few minutes just to check something really quick, you know, sports score for the playoff game in the middle of the day or something, it wouldn't be a problem, but spending 88 minutes at a time when they're supposed to be working on the computer, using non-work related stuff is an except. The limitations is not unwidely, in the policy it states that it should not interfere with your duties. We don't find any allegations in the specifications that during that 30 minutes you were supposed to be doing X or Y. No, but he was charged not only with using the computer, but inappropriate non-work during work hours, so presumably there's something he could have done for the government for the 102 minutes that he spent on the computer doing non-work related stuff while he was getting paid from the public debt. And were that addressed in the charges, we could have addressed it in the response, but there is no allegation, because in the proposed letter in another part, it references that you were not giving attention to your duties, and we raised that in my letter responding to the charges. I said it appears that he's making an allegation in the body of the letter which does not reference in the charges. Doesn't the policy also prevent you from ever looking at sexually explicit material? And if he were charged with that, judge, we would have a different case. Were you admitted to it on page 2? Certainly, because as I stated in the brief and as it's stated, testified to by Mr. Hill, he wasn't charged for looking at pornography. That's his testimony. His testimony on that point is on page 78 of the appendix in which I asked him that whether Mr. Baldwin, I said something to the effect that Mr. Baldwin was not being disciplined for the content in which he was looking. And it was strictly the time, and Mr. Hill said he wasn't, and I haven't disciplined him for viewing pornography. Wasn't that related to the ones for which they had to go back and recreate what he was looking at, and they were never able to find out exactly what it was he was looking at, or was that statement applied to all charges? The objection was raised in pre-hearing and also during the hearing that the voluminous 500 page tab 4S was, he wasn't charged with pornography, so why is that in there? And the judge ruled the objection saying, well they've got the burden of showing that it was not work related. That's an element of the charge. So this is simply offered to show that his work was not, that his internet use was not work related. He could have been reading boiler plant stuff. Okay, so it's not work related. I don't know how looking at pornography on a work computer for an extended period of time during the work day isn't a ground for... It is, had he been charged with that judge. It is. The agency could have simply stated you are charged with violating the policy by viewing sexual explicit material on the internet. We would have had a different case then. We would have had a different defense then. We only have to defend against the charges. I've set the cases out there and I've got many more to add that says it's not the MSPB's duty to substitute what it believes to be a more appropriate charge and to sustain removal based upon a more appropriate basis. Lachance, Goss, I'd be happy to provide those. There's several mentioned in the gray brief. Were you in any way prejudiced by the failure to spell out the charges that you're alluding to? Sure. It's a totally different case. Would you know what the facts and circumstances were that provoked this incident? Judge, if the board's going to substitute its own basis for determination, that's not its job. And that's what occurred here and that's what it sounds like the court wants to do here. It's to say we found the evidence in the hearing showed that you violated a different provision from which you're being charged. But if you're charged with murder, you don't prove murder but you prove stealing, that's not a basis for removal or any charge. You don't pick up and support a termination based upon evidence which is discovered during the prosecution of the case or which comes up through the evidence. We only have to defend against the charges that are written. The cases that are provided and there's very specific cases that this court has ruled on, Lachance I think being one of the better ones, that makes that point exactly. It's a matter of due process. Had we been informed that he was being terminated for pornography, or look, pornography was nudity, we would have got the hard drive, we would have had someone come in to look at that and even to that point, Judge, the evidence in 4S, the pictures, it was admitted that that's probably not what he viewed, what Mr. Baldwin viewed. There's no way of going back and looking at what he actually viewed. It doesn't matter which person he viewed, he admitted he was viewing sexually explicit content during that time, so that picture is probably irrelevant to the proof because you've made an admission. Why not, Judge? He wasn't charged with that. Well, he was charged with using the computer for non-work related matters for long periods of time during the work day. And all 60 was upheld by the boards on the same basis. Only some of the charges were supported by the evidence when you look at the pictures. He also read the Buffalo News, he's a gun collector, he read about guns, he read a number of newspapers, those were all set up in my brief. What about those charges? Those charges were sustained on what? Simply using the computer for non-work related purposes is not a violation. And the deciding official said, we're not charging you with violation of looking at pornography. It's excessive use, which isn't even set out in the charges. They said when they were looking at doing the forensic investigation, they said, well just look at everything over 10 minutes. And he said, I just picked it. And that's also in the deciding official, Mr. Hill's testimony at the hearing. I don't understand your complaint about that because it only helps you. It removes undoubtedly many further instances of misuse from being considered. If he had just picked it 15 minutes, there would be fewer. If he had picked just 20, there would be fewer. And if he had told in advance, if there was some notice, he wouldn't have looked at it at all. Why bother getting on the computer for 10 minutes? The evidence showed that when you add all those minutes up, it goes back 18 months, it went back as far as it could. And they went back 18 months and they found a total, when you add all those minutes up, of 1,276 minutes. About 20 hours over 18 months, 20.6 hours. The testimony by his co-workers was that I spent an hour or two hours on the computer every night. Mr. Bennett testified it was not uncommon for him to be on for two hours a night. Two hours times 18 months is 360 hours. This is a boiler plan. Operate 24 hours a day, midnights. There's nothing to do besides stay awake, respond to bells, make your hourly checks. We also have to look at the specifications which show that he's actually surfing and perusing the internet. The evidence showed that, their experts said that that's demonstrated by close proximity in time of the mouse clicks. When you look at the spreadsheet, each line represents a screenshot. And the time on the right shows what time he was on that. The time immediately above that shows when he clicked and went to the next screen. And he clicked and went to the next screen. So, according to their expert, active perusing and reading the internet is reflected by times very close. If you look at the far right column of the spreadsheet which begins on page 126, you'll see that the times are on the right side. The farthest number on the right of each column is the total amount of time. Like on page 126, it shows the total use of 38 minutes. The bottom number reading from the bottom to top of each yellow block of time shows that he signed on at 1821. He looked at the next screen at 1821, the next screen at 1821, the next screen at 1822, and he finally signed off at 1859, 38 minutes later. So, that shows active. Well, if you go to the very next page, page 127, the second one down shows the hour 42 minutes, the bright yellow entry. There's only three mouse clicks. He looked at the screen, probably went up and answered an alarm, did his rounds, whatever, came back and looked at something, clicked on the screen, did something else. That's not active perusing and reading. It's very likely that he was doing his duties at that time. All the evidence shows was that he was signed on the internet. It doesn't show and it doesn't allege that he neglected any of his duties. The court, the board is bound by the charges as stated. And the charges as stated, first of all, they do not allege a violation of any policy. It's not against the rules to view, to use the internet. But the charge was misuse of government property, among other things. Misuse of government property. The misuse was what? But that's a broad charge that puts you on notice of the concerns that were raised and the specific details of that misuse was set forth in all of these different allegations. That's a general term. It's a very general term. But then you certainly were free to assert a defense based upon the policy, were you not? Was it misuse based upon neglect of work? Well, it was misuse based upon the facts alleged in each of these various counts. The misuse is only what time he signed on, what time he signed off. You have to look at the specifications. That's what we're charged with responding to, is only the specifications. I've reserved some time. I'd like to come back. Yes, thank you. We'll hear from the other side. Mr. Prihody. Good morning, ma'am. Please, the court. The court should affirm the board's decision in this case. I'd like to first address the issue of the use of government equipment to access pornographic materials. Mr. Baldwin asserts that that wasn't part of the charges against him. That simply isn't true. The letter of proposed removal actually specifically references the fact that he used government equipment to access sexually explicit websites. And the definition of misuse of government equipment includes the viewing of sexually explicit materials. So it's clear that it was part of the charges. Now, Mr. Baldwin also contends that the agency was only able to recreate the websites that he accessed. The agency was never able to see actually what he viewed. Can you tell me where in the appendix the proposed removal is where it indicates and puts him on notice of the fact that pornographic material, he's being charged with that? Because it's not, I think counsel for Mr. Baldwin is correct, it's certainly not listed anywhere in the reasons for proposed removal, which is on pages 147 through 160. Well, I respectfully disagree with that, Your Honor, because the reasons list misuse of government property. And that includes, if you look at the definition of misuse of government property, which is at page 229 to 230, that includes the viewing of sexually explicit materials. But to answer Your Honor's question, at page 162 of the joint appendix, that's page 16 of the letter of proposed removal, it's in that large paragraph, paragraph 2, approximately 10 or 12 lines up from the bottom. It says, instead of focusing your concentration on the aforementioned significant duty, status, responsibilities, you elected to divert your attention to the pursuit of personal endeavors on the internet involving a wide array of topics, including male and female genitalia, sexual gratification websites, etc. So the idea that Mr. Baldwin was not noticed, that the charges included the fact that he was using government equipment to access sexually explicit materials, is simply not supported by the record. Did the record contain evidence, as was suggested by Mr. Baldwin's counsel, about many other people likewise sitting on the computer for hours at a time? Your Honor, I believe there was... I believe him. I mean, working at a power plant, they're there to make sure nothing goes wrong, which could possibly be a very long and boring day. So how is it really taking him away from his job to go on the computer for a little while? Well, Your Honor, I believe there was... Apart from the sexually explicit stuff. Yes, there was some testimony that co-workers did use the computer for personal use at times. There was not testimony that the co-workers accessed pornographic materials. Moreover, those co-workers didn't have two prior disciplinary actions against them, one for striking a co-worker and one for failing to adequately engage in mandatory safety training. And when Mr. Baldwin received that second disciplinary action, he was put on notice, and it's actually discussed in this notice of removal, he was put on notice that any further disciplinary issue could be grounds for removal. And was that properly considered in, like, the Douglas Factors type of analysis with regard to his removal? Yes, Your Honor, it was. And he, of course, though, doesn't challenge that aspect of the decision here. Was there account for inadequate performance of the duties of the position? Your Honor, there were, in addition to the misuse of government time and misuse of government equipment, Your Honor, there were three other charges. The first charge was – the first and the third charges were inappropriate conduct in the workplace concerning – the first charge concerned allegations that Mr. Baldwin had made statements concerning sabotaging the boiler equipment. Those two charges – I don't know if we understand that, but was there anything specific to not performing the duties? Well, the charge – there were charges of misuse of government time, Your Honor, and I do want to actually address that point, though, that Mr. Baldwin has made. If Your Honor would look at page 227 of the Joint Appendix, and this is with respect to – I want to make a couple points with respect to the argument concerning the misuse of government time. What Mr. Baldwin seems to be saying now is that the agency had to show that his use interfered with official business, and that's actually not true. I mean, first of all – But were there any details as to how it interfered with the performance of the duties? Well, Your Honor, if Your Honor looks at the description on page 229 of the agency's policy, it says, VA employees are permitted limited use of government office equipment for personal needs if the use does not interfere with official business and involves minimal additional expense to the government. And there was testimony by the deciding official that he viewed any use that was more than 10 minutes as creating additional expense to the government because it clogs up website traffic, for example. So – No, you don't pay for – I mean, all that's going to do is make the internet operate a little bit slower, but you're not paying – the government's not paying an additional penny for that. Well, but Your Honor – That would create additional expense, your policy. Well, it is an additional expense, Your Honor, because – It is an additional expense, so it can't actually support the position that you just asserted. Your Honor, it does, because when folks clog up the internet with personal use, it means that employees who are using the internet for actual work-related uses can't do so, or their use may be slower, for example. So what the deciding official said is that he viewed any use that's more than 10 minutes as a violation because it's more than limited personal use, which is what the policy provides. And again, this only relates to the charges of misuse of government time. It doesn't have any – excuse me, misuse of government property. It doesn't have any bearing on the misuse of government time charges because the policy is clear that you can never use a government computer while you're at work. Page 227 says that the directive establishes new privileges and additional responsibilities for VA employees. It says that employees can use government office equipment so long as that – Your Honor, is that your reading from the policy? I am. Where are the charges for Mr. Bogan? The charges? The charges that are specific with details as to how that policy was violated. Well, Your Honor, what the charges say is that – The attorney says that there is nothing in the charges about viewing sexually explicit material. Well, Your Honor, the charges are for misuse of government equipment and misuse of government time. If Your Honor looks at the definition of misuse of government equipment in the policy, it says misuse of government equipment includes using government equipment access. The policy lists 20 or 30 areas for which one shouldn't use a government computer. How do we know which one and the seriousness and all else is involved here? Well, Your Honor, I don't think the agency has to delineate with that level of specificity in the charges. Overload the system and other things. No charge of overloading the system. How do we know which of those charges, as Mr. Ingram says, he's supposed to defend against? Again, well, I would say first, to the extent there's an issue here, there's no prejudice to Mr. Baldwin. He had ample opportunity at the hearing to rebut all the evidence that the agency presented. But, Your Honor, again, the agency doesn't have to specify with that level of detail what the charges are. It can simply say, as it did here, you're charged with misuse of government equipment. And Mr. Baldwin obviously knows what he's using the equipment for himself. You're telling us he needs to defend against a charge that wasn't made. No, the charge was made, Your Honor. The charge was misuse of government equipment and misuse of government time. And, Your Honor, he says it's permitted that those same guidelines say as long as you don't use it for any of these 20 different things, you can do so. As has been pointed out, this nature of the job may very well be noticing that some of the reasons are at midnight and one in the morning, that there may very well be periods of inactivity where one needs to keep himself awake. But, Your Honor, what the agency official testified is that any use that's more than 10 minutes is a violation of the policy. That's more than limited personal use. But that's because of your claim that it creates additional expense. But it just occurred to me that, as I remember, Mr. Baldwin works nights. I find it very hard to believe that using the Internet from 2.20 to 3.40 in the morning was so substantially slowing it down for someone else that it was creating additional expense. That seems to me to be a nearly frivolous argument. Your Honor, the agency… There was not big Internet traffic at that time of the night. Well, Your Honor, the agency obviously has to make some sort of decision as to what reasonable limited personal use means. So what the agency said is 10 minutes. We're going to say 10 minutes is limited personal use. And, Your Honor, the idea that Mr. Baldwin was simply using the computer for 11 minutes simply isn't supported. If you look at the charges, we're talking about 102 minutes, 75 minutes, 73 minutes, 88 minutes. This is extensive use of the computer. And, again, it doesn't change the fact that he was using the computer to access sexually explicit materials. And, moreover, Your Honor, as I said, the policy makes clear that you can never use the computer when you're on duty. So that argument would only relate to the charges of misuse of government time. We have a 12-minute block of time between 2.17 a.m. and 2.29 a.m. That doesn't say what was being done or what the alternatives were, what people in the position, what the demands of the position are at that hour? Your Honor, the charges say, as an employee of the Department of Veterans Affairs, you're required to use VA equipment only for official business and not for personal reasons. And, Your Honor, I think it would go far beyond what's required under due process to make the agency set forth for each specific charge what he actually viewed at a given time. But, in fact... You're taking a man's job away. You're saying we don't have to tell you why? But, Your Honor, at the hearing, moreover, Mr. Baldwin had more than adequate opportunity to rebut all these charges. And the agency went through each specific charge and showed what he either viewed or the cookies for the websites that he accessed. And Mr. Baldwin admitted that he accessed pornographic materials. I'm sorry? He was just charged with their 12 minutes in the small hours of the morning? Your Honor, he was charged with misuse of government equipment, which, under the definition, includes using government equipment to access pornographic materials. And, again, Your Honor, the idea that Mr. Baldwin was non-notice of that charge isn't supported by the notice of removal itself. The notice of removal actually references the fact that he used government equipment to access sexually explicit materials. So the idea that Mr. Baldwin didn't know that coming into the hearing is just not supported by the record. Again, that's at page 162, Your Honor. That's in the notice of proposed removal. Unless the court has further questions, we respect the request that the court affirm the board's decision. Thank you. Why, in fact, in your briefs, when you're given the impression that this is a person who immerses himself in pornography, why wasn't there a charge of sexual explicit viewing if that is the seed that you've been planting in the eyes of the decision-makers? Your Honor, again, it was part of the charges. And, in fact, there was testimony by the deciding official that it was a factor in the charges as well. It was decided on a basis not included in the charge for dismissal. Your Honor, we respectfully disagree. Again, Your Honor, to quote from the notice of dismissal, you elected to divert your attention to the pursuit of personal endeavors on the Internet involving a wide array of topics, including male and female genitalia, sexual gratification, websites, etc. That put him on notice, obviously, that that was part of the charges. He has to defend against a charge not made is what I hear you say. No. What I'm saying is the charge was made, Your Honor. Okay. Thank you, Mr. Freeman. Thank you. Mr. Ingram, you have three minutes. Thank you, Your Honor. The quote that counsel stated about the supposed to be incorporated was addressed in the response letter. I stated that it appears that you're also charging a misuse or a neglection of duty. And because there's a provision, it's obviously contemplated that if your use interferes with your duties, that's one of the prohibitions that should not interfere with your duties or your productivity. So we were trying to clarify that. And the official in his decision letter agreed with my point and said, no, that's not part of the charges. And I keep finding it and losing it again. But the decision letter addresses my argument on that point. What about the fact that limited personal use of government office equipment, according to the policy, says it has to only be during non-work time? Well, it's not that. Mr. Hill's testimony stated that it's permitted. Well, there's a written policy. The written policy, which you keep referring me to, says, but, yes, you can use it in limited quantities, but not during your work hours. I think it says, well, this personal use must not result, if that were that tight, Judge, there'd be no need to say that this personal use must not result in loss of employee productivity or interference with official duties. If it were that absolutely plain, there'd be no need for anything. Well, sure, you could do that, right? Because if you come in in your non-work hours, but they happen to be someone else's work hours, and you take over the computer for non-work-related functions, you could be preventing someone else from rightly using it. The term non-work hours is defined in the policy, Judge, on page 233. Employees' non-work time is that time when the employee is not otherwise expected to be addressing official business. It's not that he's expected to be addressing official business. At 2.30 in the morning, Judge, in a boiler plant, there's no business to address. Sure there is. Pipes could be leaking. And he would address that, where that is his responsibility. So we're still, we're defining what his work hours are. I clearly think those are his work hours. Work hours, well, it's defined, Judge. Non-work hours is defined. Mr. and Mr. Hill, the deciding official, thought it broad enough to say it's provided for. You can use the computer during, there's simply no ban per se of use of the computer while you're at work. He knows employees do it, and he testified to that. I do, this is very, because this is the law. This is O'Keefe v. USPS, decided by this court, 2002. It's 318-313-10. The board also abused its discretion by exceeding the scope of the notice of proposed removal. Only the charge and the specifications set out in the notice may be used to justify punishment because due process requires that an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed defense. If he was charged with pornography, say it. It's got to be that specific. We could have addressed that, because it's not all pornography. He read about guns, because he's a gun conductor. He read the Buffalo News, he read a number of other newspapers. This is turned into, he was just looking at pornography for hours on end, and that's not it. To continue on in O'Keefe, the board... What about the statement that government counsel referred to on page 162? The charge about you elected to divert your attention to the pursuit of personal endeavors on the Internet involving a wider array of topics, including male and female genitalia, etc. It sounds like that says, well, you were looking at this stuff and not doing your duties. And we responded to that. That's part of the charge, is it not? No, the charge is contained within itself, Judge. You don't look outside what the other evidence is. The charges, that's an interpretation not by the deciding official, but by the proposing official, which was not agreed to by the deciding official. And I can, if I can, I just simply cannot, of course, find that decision. But I do want to... If this language is not part of the charge, what is it? Page 234 is the decision. I'm sorry, if it's not part of the charge? On page 162, if that language is not part of the charge... No, the charges are set out individually, 64 of them. Because that statement doesn't have any effect to whatever charge it was when he's reading the newspaper, or looking at guns, or looking on his retirement account. It has no effect to those. So the deciding official said, Your representative takes the position that your service chief has included a new charge, i.e. failed to perform your duties without affording the opportunity to respond to such charges. I can understand the argument. I'm inclined to agree with you. So the part, that relevant part where it says you were looking at pornography instead of doing your duty, the deciding official stated on page 234 that that's true. The board's review and agency... We need to wrap it up, so a final word, please. Okay, well, the charges, the inquiry and the board's actions are limited to the charges and the specifications. You don't go outside the charges, you don't find out, specifically on a general charge, you simply do not make the general charge and then try to find something to support it. That cautionary is provided for in the board's decision in some of the cases, the Chans and some of the other cases I've cited. Thank you very much. Thank you, Mr. Ingram and Mr. Pram.